OPINION
{¶ 1} This matter is before the Court on Defendants-Appellants' (West Carrollton School Board and the Ohio Bureau of Workers' Compensation) direct appeal from a trial court verdict finding that Plaintiff-Appellee Susan Googash was entitled to participate in the Ohio Workers' Compensation System.
 {¶ 2} Googash began teaching in the West Carrollton School District in 1983. By 1990 she was assigned to room 316 in the high school building. The wing of the building in which Googash taught had a history of water leakage, and garbage cans were often used to collect the water dripping into her classroom. The water caused the ceiling tiles to turn nearly black with mold, and a white stringy substance hung from the tiles. Although the tiles were periodically replaced, the growth would inevitably reappear.
 {¶ 3} In the early-to-mid-1990's, Googash developed a rash all over her body; she experienced a burning in her eyes; and she lost her voice. At first these symptoms would disappear when she left the school building, but would come back after she returned. Eventually, lengthier periods of time were required for her symptoms to be relieved. Googash finally left her employment in the spring of 2000.
 {¶ 4} In 1999, environmental testing requested by the school board revealed no microbial contaminant, but did disclose that room 316 had no ventilation. In May 2001 the teachers' union hired a certified industrial hygienist who performed more extensive testing and discovered the presence of several toxic molds in the building, including in Googash's ceiling tiles. The molds produce mycotoxins, which can cause serious health conditions.
 {¶ 5} Googash sought medical treatment for her health concerns and was diagnosed by Dr. John Boyles as suffering from multiple chemical sensitivities, allergic dermatitis, allergic rhinitis, chronic pharyngitis, chronic laryngitis, and toxic brain syndrome. Googash was diagnosed by Dr. Robert Baughman with asthma. Googash also presented evidence from other teachers as to the conditions of the school, their observations of Googash's illnesses, and their own suffering from similar health conditions.
 {¶ 6} On March 31, 2001, Googash sought to participate in the Ohio Workers' Compensation System for various illnesses that she contracted due to her exposure to toxic mold over the course of many years of employment with the West Carrollton School Board. The Ohio Bureau of Workers' Compensation summarily denied Googash's request, and she appealed to the Montgomery County Common Pleas Court pursuant to R.C. § 4123.512. The case was tried to a jury who considered Googash's claims of chronic laryngitis, pharyngitis, toxic brain syndrome, multiple chemical sensitivities, allergic dermatitis, allergic rhinitis, and asthma. Although the trial court initially granted a directed verdict on the asthma claim, the court later allowed it to be submitted to the jury. The jury returned a verdict in favor of Googash, finding that she was entitled to participate in the workers' compensation system for all diagnoses. Appellants filed a motion for judgment notwithstanding the verdict, which the trial court denied. Appellants now appeal the jury's verdict.
 I {¶ 7} Appellants first claim that the trial court erred in denying their motions for a directed verdict and for judgment notwithstanding the verdict because Googash did not contract any occupational disease. Specifically, they claim that while Googash may have had various symptoms, a symptom is not a disease. Moreover, they claim that she failed to prove that her symptoms were caused by her work environment. However, because we find that Googash presented sufficient evidence of having contracted several occupational diseases, we cannot conclude that the trial court should have granted either a directed verdict or judgment notwithstanding the verdict.
 {¶ 8} "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." Posin v. A.B.C. MotorCourt Hotel, Inc. (1976), 45 Ohio St.2d 271, 275,344 N.E.2d 334, citations omitted. See, also, Civ.R. 50(A)(4). Not surprisingly, then, the same de novo standard of review applies to appellate challenges to both the overruling of motions for directed verdict and for judgment notwithstanding the verdict.Posin, supra, at 275; Goodyear Tire Rubber Co. v. Aetna Cas. Surety Co. 95 Ohio St.3d 512, 2002-Ohio-2842, ¶ 4, citingCleveland Elec. Illum. Co. v. Pub. Util. Comm. (1996),76 Ohio St.3d 521, 523, 668 N.E.2d 889.
 {¶ 9} In order to participate in the workers' compensation program, a claimant must either have been injured at work or have contracted an occupational disease. Googash asserted her right to participate based upon her contraction of several occupational diseases.
 {¶ 10} An occupational disease is defined as "a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in a greater degree and in a different manner than the public generally." R.C. §4123.01(F). See, also, State, ex rel. Ohio Bell Telephone Co. v.Krise (1975), 42 Ohio St.2d 247, 327 N.E.2d 756. A claimant must prove by a preponderance of the evidence, medical or otherwise, that there is a causal connection between the employment and the disease. See, e.g., Oswald v. Connor (1985), 16 Ohio St.3d 38,41-42, 476 N.E.2d 658, citing Fox v. Industrial Comm. (1955), 162 Ohio st. 569, 125 N.E.2d 1.
 {¶ 11} It must be remembered that when determining whether a disease is peculiar to the claimant's employment, the question to be answered is "whether the claimant, in his own particular daily activities, was more apt than the general public to become so afflicted." Patterson v. Connor (1984), 19 Ohio App.3d 304,306, 484 N.E.2d 240. In other words, an employer must take the employee as he is, with all of his own particular susceptibilities, sensitivities, and predispositions. See, e.g.,Hamilton v. Keller (1967), 11 Ohio App.2d 121, 127,229 N.E.2d 63.
 {¶ 12} Googash offered the testimony of Dr. Baughman regarding his diagnosis of asthma. Googash also offered the testimony of Dr. Boyles regarding his diagnoses of multiple chemical sensitivities, allergic dermatitis, allergic rhinitis, chronic pharyngitis, chronic laryngitis, and toxic brain syndrome. Dr. Myers confirmed the diagnosis of multiple chemical sensitivities. Significantly, Googash had no history of any of these conditions prior to working at West Carrollton High School. To the contrary, her health problems began after she started working there. At first, the problems would clear up when she was away from the building for extended periods of time, such as over summer vacation. However, these health problems continued to worsen over the many years that she worked there.
 {¶ 13} John Kominsky, a certified industrial hygienist, tested the building and found extensive mold and microbial contaminants. He specifically found the molds Aspergillus and Stachybotrys in Googash's classroom. Dr. Baughman explained that both molds pose inherent health risks to humans, and can cause various lung diseases, including asthma. He stated that Googash's asthma was caused by something that she was exposed to during the workday. Similarly, Dr. Boyles stated that, within a reasonable degree of medical certainty, Googash's health problems were caused by the hazardous condition of her place of employment.
 {¶ 14} In summary, Googash offered testimony that she had not previously suffered from any of these conditions, but that her illnesses became evident while she worked in the West Carrollton High School. Moreover, there was testimony of the presence of toxic molds in the building as well as of the potential of those molds to cause health problems in those who come into contact with them. Accordingly, Googash provided sufficient evidence to establish a causal connection between her diseases and her employment to warrant the submission of Googash's claims to the jury. After all, the jury must determine matters of witness credibility, not the trial court. Hoops v. Mayfield (1988),44 Ohio App.3d 50, 541 N.E.2d 113. See, also, Howell v. DaytonPower Light Co. (1995), 102 Ohio App.3d 6, 14, 656 N.E.2d 957, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,461 N.E.2d 1273. Therefore, neither a directed verdict nor judgment notwithstanding the verdict would have been appropriate in this case. Appellants' first assignment of error is without merit and is overruled.
 II {¶ 15} In their second assignment of error, Appellants argue that the trial court abused its discretion in admitting testimony from non-party co-workers about the conditions of the school, their observations of Googash's illnesses, and particularly regarding their own medical problems. We disagree.
 {¶ 16} The admission of evidence lies within the sound discretion of the trial court, and the trial court's ruling will not be reversed absent an abuse of discretion. See, e.g., Stateex rel. Van Dyke v. Pub. Emp. Retirement Bd. (2003),99 Ohio St.3d 430, 2003-Ohio-4123, ¶ 43. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140, citations omitted.
 {¶ 17} Certainly, observations of co-workers regarding the physical conditions of the work environment may be relevant to the hazard and risk element of proving an occupational disease. See, e.g., White v. Center Mfg. Co. (1998),126 Ohio App.3d 715, 711 N.E.2d 281; Prejean v. Euclid Bd. of Edn. (1997),119 Ohio App.3d 793, 696 N.E.2d 606. Therefore, Googash's co-workers appropriately testified regarding the condition of the high school, including the trash cans regularly used to collect dripping water, and the stains covering the ceiling tiles and on the walls. They also described the white, stringy substance that hung from Googash's ceiling tiles. Additionally, the coworkers confirmed their observations of the physical illnesses that Googash suffered while working in the building. We see no abuse of discretion in admitting such testimony as going to the hazard and risk element of proving an occupational disease.
 {¶ 18} Appellants also insist that the co-workers should not have been allowed to testify about their own medical conditions. Notably, however, in Prejean, supra, the appellate court found that the trial court did not abuse its discretion in allowing a coworker to testify about her own medical condition. Moreover, the Prejean court did not believe that expert testimony was required to support the co-worker testimony. In the case at bar, the testimony was relevant to support Googash's claim that her illnesses were the result of working in the high school. This is particularly true since the coworkers experienced similar symptoms to Googash, and like Googash, their symptoms also dissipated when they left the school.
 {¶ 19} Moreover, any risk that the jury would impermissibly consider the coworker testimony for more than the element of hazard and risk, was negated by the trial court's limiting instruction whereby the court specifically instructed the jury to consider the testimony "only as it relates to the conditions of a particular job to satisfy the hazard and risk parts of the definition of an `occupational disease' . . . and not for any other purpose." "A jury is presumed to follow the instructions given to it by the trial judge." State v. Stallings,89 Ohio St.3d 280, 286, 2000-Ohio-164, citations omitted.
 {¶ 20} Because the trial court did not err in admitting the contested testimony of Googash's co-workers, Appellants' second assignment of error is overruled.
 III {¶ 21} Appellants next insist that the trial court erred in ordering reimbursement for expenses not authorized by R.C. §4123.512. Specifically, Appellants claim that the trial court should not have awarded Googash reimbursement for the stenographic costs of depositions used at trial because she had also requested reimbursement for videographic costs of the same depositions. For the following reasons, we do not find that the trial court abused its discretion in granting reimbursement.
 {¶ 22} "A trial court's decision to grant or deny a request for costs will not be disturbed absent an abuse of discretion. In order to find an abuse of discretion, [the appellate court] must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment." Pritchard v. Administrator, Bur. of Wkrs. Comp.
(April 29, 1998), Tuscarawas App. No. 97APD080053, citingBlakemore, 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 23} Revised Code Section 4123.512(F) provides for the reimbursement of the "cost of any legal proceedings" incurred by a claimant who successfully brings a workers' compensation appeal. Moreover, in R.C. § 4123.95 the legislature stated that the workers' compensation statutes must be liberally construed. This furthers the legislative intent that "`a claimant's recovery shall not be dissipated by reasonable litigation expenses connected with the preparation and presentation of an appeal.'"Schuller v. U.S. Steel Corp., 103 Ohio St.3d 157,2004-Ohio-4753, ¶ 10, quoting Moore v. Gen. Motors. Corp., TerexDiv. (1985), 18 Ohio St.3d 259, 262, 480 N.E.2d 1101. Accordingly, the Ohio Supreme Court has repeatedly interpreted the phrase "cost of any legal proceedings" very broadly. See, e.g., Schuller, supra, at ¶ 7, citations omitted.
 {¶ 24} In keeping with the legislative intent and with the Supreme Court's history of broad interpretation, we reject Appellants' insistence that R.C. § 4123.512(F) be narrowly construed to prevent reimbursement of stenographic costs. Therefore, we cannot conclude that the trial court abused its discretion in ordering reimbursement of this "cost of . . . legal proceedings." Appellants' third assignment of error fails.
 IV {¶ 25} Finally, the Board presents one additional assignment of error in which it argues that the trial court abused its discretion in giving inappropriate jury instructions. However, after reviewing the instructions in their entirety, we find that the trial court properly instructed the jury.
 {¶ 26} In reviewing proposed errors to jury instructions, an appellate court must consider the jury charge as a whole and decide "whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Becker v. Lake Cty. Mem. Hosp. W. (1990),53 Ohio St.3d 202, 208, 560 N.E.2d 165. Thus, the proper standard of review is whether the trial court abused its discretion in instructing the jury as it did. State v. Wolons (1989),44 Ohio St.3d 64, 68, 541 N.E.2d 443.
 {¶ 27} First, the Board claims that the trial court should not have given an instruction regarding co-worker testimony. However, as discussed above in addressing Appellants' second assignment of error, we find that the trial court's limiting instruction was appropriate. The co-worker testimony was admissible for only a limited purpose, and the trial court correctly so instructed the jury upon Googash's request.
 {¶ 28} Second, the Board argues that the trial court abused its discretion in advising the jury that an employer must take his employee in the condition in which he finds him. As this is an accurate statement of the law, we find no error in the trial court so instructing the jury. See, e.g., Hamilton v. Keller
(1967), 11 Ohio App.2d 121, 127, 229 N.E.2d 63.
 {¶ 29} Because the trial court properly instructed the jury, the Board's fourth assignment of error is without merit and is overruled.
 {¶ 30} The judgment of the trial court is AFFIRMED.
Fain, P.J. and Brogan, J., concur.